IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GENIA M. McPHERSON**

        **Plaintiff,**

vs.                                                         **No. CIV 03-0726 WDS**

**JO ANNE B. BARNHART, Commissioner**
of the Social Security Administration,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Complaint For Review of Administrative Decision filed on June 13, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits or supplemental security income. The Court, having considered Plaintiff's Motion [docket # 7] and Memorandum Brief [docket # 8], Defendant's Response [docket # 9], Plaintiff's Reply [docket # 12], the administrative record and applicable law, finds that Plaintiff's Motion to Reverse should be **DENIED,** and that Plaintiff's motion to remand should be **GRANTED**, and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### I.  Background

Plaintiff, who was born on July 11, 1965, worked as a laundry aide, fast food cook, and warehouse worker before the onset of her alleged disability. Tr. 85.

Plaintiff filed her initial concurrent application for disability insurance benefits ("DIB") and

Supplemental Security Income Benefits ("SSI") under Title II and XVI of the Social Security Act on March 8, 2001, Tr. 53. Plaintiff alleged that she became unable to work as a result of her disabling conditions on February 28, 2000. Tr. 71. After Plaintiff's application was denied at the initial level, Tr. 55-59, and at the reconsideration level, Tr. 62-65, Plaintiff appealed by filing a request for hearing by an administrative law judge ("ALJ") on November 19, 2001, Tr. 66-67.

The hearing before the ALJ was held on April 24, 2002. Tr. 29-52. Plaintiff appeared and was represented by an attorney. Tr. 29-52. Plaintiff alleged that she was disabled primarily as a result of back pain, depression and obesity. Tr. 34-35, 37, 84, 96. In a decision dated June 27, 2002, the ALJ denied Plaintiff's claims for DIB and SSI. Tr. 10-19. Plaintiff then filed a request for review with the Appeals Council on July 29, 2002. Tr. 272-273. The Appeals Council denied Plaintiff's request for review on April 16, 2003, Tr. 6-7, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481

On June 13, 2003, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, (Docket #3 and #4) this case was assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II. Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the

evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional

capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)).  The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

Although there was no specific finding in the ALJ's decision, the ALJ evidently accepted as true that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ found at step two that Plaintiff's depression, chronic low back pain, and obesity are severe impairments within the meaning of the Regulations.  At step three the ALJ found that the claimant's major depression had not resulted in at least two areas of "marked" limitation of function as required by Part B of listing 12.04. Tr. 15.  Regarding Plaintiff's back pain, the ALJ found that the Plaintiff did not have nerve root compression characterized by pain, limitation of motion of the spine, motor loss, or atrophy with associated muscle weakness, accompanied by sensory or reflex loss as required by Listing 1.04. Tr. 15.  The ALJ made no step three finding regarding Plaintiff's obesity.  At step four, the ALJ concluded that Plaintiff retains the RFC to perform a significant range of light work with some non-exertional limitations associated with obesity and major depression. Tr. 16 .  Given this RFC assessment, the ALJ found that Plaintiff could perform her past relevant work as a waitress or counter person.  Tr. 18.  Additionally, the ALJ made the step five finding that there are a significant number of jobs in the national economy that Plaintiff could perform.  Tr. 18.  Plaintiff contends that the ALJ erred by not finding at step three that Plaintiff's mental impairment equaled Listing 12.04, Affective Disorders.  The Plaintiff also contends that the hypothetical questions posed

to the vocational expert did not adequately incorporate Plaintiff's non-exertional and mental limitations. Thirdly, Plaintiff contends that the Commissioner erred by ignoring the opinions of Plaintiff's treating physicians.

## IV. Discussion

### A. Whether the ALJ Erred at Step Three of the Sequential Analysis

Plaintiff contends that the ALJ committed error at step three by not finding that the Plaintiff was disabled due to mental impairment. I find that the ALJ did commit error at step three, but for a different reason than that advocated by plaintiff. While the ALJ found in his step two analysis that Plaintiff had three severe impairments, depression, back pain, and obesity, the ALJ performed a step three analysis for only the first two impairments, not for obesity. Furthermore, the step four and five analyses did not properly take into account plaintiff's obesity.

Although Listing 9.09--Obesity, was removed from the Listings in 1999, SSR 02-01p makes it clear that obesity is still considered a severe impairment which, alone or in combination with other impairments, can result in disability. Paragraphs added to listings for the musculoskeletal, respiratory and cardiovascular body system listings, remind adjudicators to consider obesity's effects when evaluating disability. See listings sections 1.00Q, 3.00I, and 4.00F. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. SSR 02-01p.

The ruling incorporates the medical criteria established by the National Institutes of Health

for the diagnosis of obesity based on Body Mass Index, which is a ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m 2). For adults, the NIH guidelines describe a BMI of 25-29.9 as overweight, and a BMI of 30.0 or above as obese. A BMI in excess of 39.9, is considered "extreme" obesity, and represents the greatest risk for developing obesity related impairments. Id. I note that the plaintiff in this case, who stands approximately 65 inches tall and is reported to weigh anywhere from 360 to 390 pounds, has a BMI of 60.

At step three of the sequential evaluation, the SSR states that an individual with obesity will be found disabled if he or she has another impairment which meets the requirements of a listed impairment. An obese person may also prevail at step three if there is an impairment which in combination with obesity meets the requirements of a listing. This is true for musculoskeletal, impairments, and it may also be true for other coexisting or related impairments, including mental disorders. Id.  Obesity, by itself, may also be found to be medically equivalent to a listed impairment. Or, adjudicators may find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.  Id  This step three analysis was not performed by the ALJ, thus remand is required.

In evaluating residual functional capacity at step four, the SSR states that obesity can cause limitation of function which can be obvious--as when there is a limitation on the ability to sit, stand, walk, or lift. The presence of adipose tissue in the hands and fingers may affect the ability to manipulate. There may also be functional limitations which are not so obvious, such as the effects of sleep apnea which can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning. Id.  The SSR continues: "As explained in SSR 96-8p, ... our

RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Id. This means eight hours a day, for five days a week, or an equivalent work schedule. Fatigue may be a factor in the ability to sustain such a work schedule.  Id.

Although a vocational expert offered testimony in connection with the step four and five analyses in this case, I see no evidence that he or the ALJ considered Plaintiff's obesity at either step. Specifically, the vocational expert opined in response to the ALJ's first hypothetical question, that Plaintiff was capable of performing her past work as a waitress. Tr. 41.  This opinion was adopted by the ALJ in his opinion. Tr. 18.  As noted earlier, Plaintiff is approximately five feet, five inches tall, and weighs over 350 pounds.  She is unable to fit into a chair with arms, Tr. 33, and her physical consultative examination was performed in a standing position because the doctor was concerned that she would collapse his examination table. Tr. 213.  Brenda Bonham is a social worker with the New Mexico Department of Children, Youth and Families.  Ms. Bonham worked with Plaintiff for approximately a month before completing a Third Party Daily Activities Questionnaire relating to Plaintiff. Tr. 101-104.  I have excerpted some of Ms. Bonham's observations below:

> Her weight makes it difficult for her to walk very far.  Her weight makes it hard for her to dress attractively.  Most of her clothes are stained and bursting at the seams.  She would not make a favorable impression on most people.  She has difficulty getting in and out of a car.  She does not fit many chairs.  She can't fit into a booth. Tr. 101.
>
> Genia weighs 360 pounds and has difficulty finding clothes she can get into. Her clothing is skin tight and bursting at the seams.  She often has BO and her hair seldom looks washed.  Even if her grooming could become impeccable, her weight might elicit prejudice.  Tr. 103.
>
> She needs frequent reminders to bathe and to use deodorant, and to wash her hair.  I've seen only slight or minimal improvement, because the problem continues.

Tr. 103.

> Genia's weight makes it hard for her to stand up from a chair, walk, bend over. . .She gets exhausted after brief periods of work and develops severe back pain. Her feet swell after moderate walking and her knees sometimes get sore. She can only move around slowly at best. Tr. 103.

Dr. Raiman K. Johnson is a psychologist who performed a consultative examination on Plaintiff. His observation of Plaintiff was that she "was casually dressed, appeared unkempt, grooming was marginal, while hygiene was poor and she had a distinct body odor." Tr. 187. The above observations do not describe an individual who is capable of functioning, let alone getting hired, as a waitress. On remand, the ALJ and the vocational expert will take Plaintiff's obesity into consideration in steps four and five of the evaluative process.

In view of the fact that this case is being remanded for further proceedings, I am directing that additional fact finding and/or clarification of the record take place in connection with the evaluation of Plaintiff's claim of mental disability. The record includes a psychological consultative evaluation performed by Raiman K. Johnson, PhD, Tr. 187-192, a Psychiatric Review Technique Form completed by E. Chiang, MD, Tr. 193-206, and a Mental RFC Assessment Form completed by E. Chiang, MD, Tr. 207-210. Dr. Johnson interviewed Plaintiff on May 23, 2001 at the offices of the Department of Children, Youth and Families in Roswell, NM. Tr. 187. Although Brenda Bonham was present, Tr. 187, there is no indication that Dr. Johnson had anything other than a brief conversation with her. Tr. 188. Nor is there any indication that Dr. Johnson or Dr. Chiang were aware of the specifics of Plaintiff's dealings with the Department of Children, Youth, and Families. There are references in the transcript to two occasions where Plaintiff's children apparently were taken from the home due to Plaintiff's inability to care for them. One such incident was weeks before

the April 24, 2002 ALJ hearing, Tr. 31. The other apparently occurred in the spring of 2001, apparently before Plaintiff met with Dr. Johnson. Tr. 103, Tr. 189. (Ms. Bonham states in her Third Party Daily Activities Questionnaire: "She (Plaintiff) had one sleepless night after Art Otero threatened to take her children again.") Notwithstanding this history, on July 11, 2001 Dr. Chiang stated that "Activities of Daily Living are adequate." Tr. 209. Dr.Chiang also opined that "Her ability to concentrate is adequate." Tr. 209. In contrast to this, Brenda Bonham wrote of Plaintiff on June 13, 2001:

> She starts sweeping, but doesn't do the entire room and doesn't pick up the debris from the floor. She doesn't notice details when cleaning, and leaves a lot of dirt around the edges. She doesn't take steps to prevent the house from getting dirty. Tr. 103.

> I have seen her get motivated to clean up her house under pressure of removing her children. She has become motivated to clean her house, but I don't know how clean it will stay when social workers quit calling on her five days a week. Tr. 104.

Dr. Johnson based his Impressions and Recommendations on the "results of the Mental Status Evaluation (MSE) and information provided." Tr. 188. It is entirely unclear what, if any, information was provided other than Dr. Johnson's interview with Plaintiff, although he indicates in his report that he spoke to Plaintiff's social worker. Tr. 188. Nor it is apparent that any information was available to Dr. Chiang other than Dr. Johnson's report.

20 CFR § 404.1520a, Evaluation of Mental Impairments, sets forth the procedures for the evaluation of mental impairments. The process is not limited to an interview of the claimant. Subparagraph (1) of the regulation specifically provides for the identification of the "need for additional evidence to determine impairment severity." In this instance I find that additional evidence including, but not limited to, Ms. Bonham's Third Party Daily Activities Questionnaire and the

Plaintiff's file from the Department of Children, Youth, and Families is required in order to properly assess the severity of Plaintiff's mental impairment. Plaintiff's counsel should insure proper supplementation of the record upon remand.

## V. Conclusion and Summary

In sum, I find that the ALJ erred at step three of the sequential analysis when he failed to consider whether Plaintiff's obesity met or equaled the requirements of a listing, either in and of itself or in combination with other impairments. I also find that Plaintiff's obesity was not adequately considered at steps four or five of the sequential process. Furthermore, I find that there is a need for additional evidence to be supplied to the psychological consultative examiner in accordance with 20 CFR § 404.1520a.

Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct further proceedings, which shall include:

1) At steps three through five of the sequential analysis, the Commissioner should re-assess Plaintiff's obesity in accordance with the guidelines set forth in SSR 02-1p; and

2) The psychological consultative examination should be supplemented to include additional documentation and/or testimony from the Department of Children, Youth and Families relating to the severity of Plaintiff's alleged disability; and

3) After receipt of a supplemental psychological consultative examination, the Commissioner should obtain additional testimony from a Vocational Expert to determine whether there are any jobs the Plaintiff can perform that exist in significant numbers in the regional and national economies. In doing so, the Commissioner's hypothetical to the VE should include functional limitations arising from Plaintiff's obesity, as well as any additional limitations described

in the supplemental psychological examination.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse is **DENIED**, and Plaintiff's Motion to Remand for a Rehearing [docket # 7] is **GRANTED,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**